# United States Court of Appeals

## For the Eleventh Circuit

---

No. 08-14064

---

District Court Docket No.
08-00046-CV-ORL-22-GAP,
BKCY No. 01-00533-BK-ABB

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jun 11, 2009

THOMAS K. KAHN
CLERK

6:08cv00046 ✓

In Re: EVERGREEN SECURITY, LTD.,

Debtor.

---

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

A True Copy, Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:_____
Deputy Clerk
Atlanta, Georgia

---

6:08cv00268 ✓

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

---

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

6:08cv00269

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

6:08cv00270

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

6:08cv00271

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,

     Plaintiff-Appellant,

versus

EVERGREEN SECURITY, LTD.,

     Defendant-Appellee.

_____

6:08cv000272  ✓

In Re:  EVERGREEN SECURITY, LTD.,

    Debtor.

_____

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

     Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

    Defendant-Appellee.

      _____

       No. 08-14536

      _____

    D. C. Docket No. 08-00046-CV-ORL-GAP,
     BKCY No. 01-00533-BK-ABB

6:08cv00046  ✓

In Re:  EVERGREEN SECURITY, LTD.,

    Debtor.

_____

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

6:08cv00268  ✓

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

6:08cv00269  ✓

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

6:08cv00270

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

6:08cv00271

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,

Plaintiff-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

6:08cv000272

In Re: EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant

---

Appeals from the United States District Court
for the Middle District of Florida

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JUL 1 0 2009
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:     June 11, 2009
For the Court:   Thomas K. Kahn, Clerk
By:   Clark, Djuanna

[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE ELEVENTH CIRCUIT

| FILED |
| --- |
| U.S. COURT OF APPEALS |
| ELEVENTH CIRCUIT |
| JUNE 11, 2009 |
| THOMAS K. KAHN |
| CLERK |

No. 08-14064

D. C. Docket No. 08-00046-CV-ORL-22-GAP,
BKCY No. 01-00533-BK-ABB

6:08cv00046

In Re: EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

6:08cv00268

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

6:08cv00269

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

6:08cv00270

2

In Re:  EVERGREEN SECURITY, LTD.,

                                                    Debtor.

_____

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

                                                    Plaintiffs-Appellants,

                          versus

EVERGREEN SECURITY, LTD.,

                                                    Defendant-Appellee.

_____


6:08cv00271

In Re:  EVERGREEN SECURITY, LTD.,

                                                    Debtor.

_____

PETER R. GINSBERG,

                                                    Plaintiff-Appellant,

                          versus

EVERGREEN SECURITY, LTD.,

                                                    Defendant-Appellee.

_____

3

6:08cv000272

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

———————————————————

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellants,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellee.

———————————————

No. 08-14536

———————————————

D. C. Docket No. 08-00046-CV-ORL-GAP,
BKCY No. 01-00533-BK-ABB

6:08cv00046

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

———————————————————

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

                                          Plaintiffs-Appellees,

LAURO LAW FIRM,

                                          Interested Party-Appellee,


                         versus

EVERGREEN SECURITY, LTD.,

                                          Defendant-Appellant.

_____

6:08cv00268

In Re:  EVERGREEN SECURITY, LTD.,

                                          Debtor.

_____

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

                                          Plaintiffs-Appellees,

LAURO LAW FIRM,

                                          Interested Party-Appellee,

5

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

_____

6:08cv00269

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

_____

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

Plaintiffs-Appellees,

LAURO LAW FIRM,

Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

Defendant-Appellant.

_____

6:08cv00270

In Re:  EVERGREEN SECURITY, LTD.,

Debtor.

---

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

                                    Plaintiffs-Appellees,

LAURO LAW FIRM,

                                    Interested Party-Appellee,

versus

EVERGREEN SECURITY, LTD.,

                                    Defendant-Appellant.

---

6:08cv00271

In Re: EVERGREEN SECURITY, LTD.,

                                    Debtor.

---

PETER R. GINSBERG,

                                    Plaintiff-Appellees,

LAURO LAW FIRM,

                                    Interested Party-Appellee,

versus

7

EVERGREEN SECURITY, LTD.,

                                             Defendant-Appellant.

_____

6:08cv000272

In Re:  EVERGREEN SECURITY, LTD.,

                                             Debtor.

_____

PETER R. GINSBERG,
PETER R. GINSBERG, P.C.,

                                             Plaintiffs-Appellees,

LAURO LAW FIRM,

                                             Interested Party-Appellee,

                    versus

EVERGREEN SECURITY, LTD.,

                                             Defendant-Appellant.

                 _____

           Appeals from the United States District Court
                 for the Middle District of Florida
                 _____

                      (June 11, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

FAY, Circuit Judge:

Peter R. Ginsberg and Peter R. Ginsberg, P.C. appeal the district court's decision to affirm the bankruptcy court's imposition of sanctions. The bankruptcy court awarded sanctions based on Ginsberg's actions in conjunction with the filing of a Recusal Motion.

Ginsberg asserts three issues on appeal: (1) the district court abused its discretion in affirming the bankruptcy court's Sanctions Order and its imposition of sanctions; (2) the district court abused its discretion in affirming the bankruptcy court's decision not to testify about or discuss the complaint of judicial misconduct; and (3) the district court abused its discretion in affirming the bankruptcy court's denial of Ginsberg's *Ore Tenus* Motion to Transfer the Sanctions Motion. We affirm the district court which affirmed the bankruptcy court.

## I. FACTUAL BACKGROUND

This appeal arises from the adversary proceeding instituted by Evergreen Security, Ltd. ("Evergreen") in the Bankruptcy Court for the Middle District of Florida. Evergreen, deemed a "ponzi scheme," filed a voluntary petition for Chapter 11 bankruptcy ("the main case"). Jon Knight and Anthony Huggins were

principal actors in the scheme, both individually and through various corporate entities.  R.W. Cuthill was appointed as the Chapter 11 trustee to recover funds belonging to Evergreen in order to pay Evergreen's creditors.

Cuthill instituted an adversary proceeding for $6.5 million fraudulently transferred from Evergreen Trust (an entity wholly owned by Evergreen) to Mataeka, and later to Knight, Huggins, and others.[1]  This action is referred to as the "Mataeka AP."  Judge Briskman served as the bankruptcy judge in the main case and the Mataeka AP.  Peter Ginsberg, of Peter R. Ginsberg P.C. (collectively "Ginsberg"), represented Knight.  GrayRobinson attorneys Scott Spradley and Maureen Vitucci served as local counsel for Ginsberg, as well as main counsel for Huggins, Mataeka and Atlantic Portfolio Analytics & Management, Inc. ("APAM").[2]  R. Scott Shuker and his firm Latham Shuker Eden & Beaudine LLP ("Latham") represented Cuthill and Evergreen.

Cuthill prevailed in the Mataeka AP.  The court issued a judgment against Knight, Huggins, and Mataeka jointly and severally for nearly $8 million, and against APAM for $2.5 million.  In an effort to collect on the Mataeka AP Judgment, Evergreen (through Cuthill) filed three involuntary Chapter 7

---

[1]   Knight and Huggins pled guilty to criminal charges arising from this theft.  They were sentenced to probation and fined.

[2]   APAM was also a named party in the Mataeka AP proceeding.

bankruptcy petitions against Knight, Huggins and APAM and Judge Briskman

appointed an interim trustee in both the Knight and Huggins involuntary actions.

On July 26, 2006, the court began the final evidentiary hearing on the involuntary

petitions, and Evergreen completed its *prima facie* case that day.

The next day, on July 27, 2006, Knight, Huggins, Mataeka, and APAM,

through counsel Ginsberg, filed a Motion for Recusal, Motion to Disqualify,

Disclosure of all Ex-Parte Communications and Revocation of all Prior Orders

("Recusal Motion") in the main case only.[3]  The parties requested the court recuse

itself, disqualify Latham, disclose all *ex parte* communications and filings, and

revoke all orders previously entered in this case and all other adversary

proceedings.  Less then a month later, Ginsberg filed a Petition for Writ of

Mandamus with the district court asking for a stay of all pending proceedings until

the resolution of the Recusal Motion.  A Supplemental Petition for Writ of

Mandamus was filed a week later, seeking Judge Briskman's removal from ruling

on the Recusal Motion and all related proceedings.  Both of these writs were

denied.

---

[3]  Although Ginsberg and Spradley both had a hand in drafting the Recusal Motion, it appears that Ginsberg did the lion's share.  (Sanctions Order at 61) ("The Tenor and content of the Recusal Motion and the Respondent's billing records establish Ginsberg was its principal drafter and driving force.").  Since Spradley has not appealed the imposition of sanctions, we refer to Ginsberg as the author of the Recusal Motion.

On October 10, 2006 Evergreen filed a motion seeking sanctions against attorneys Spradley, Vitucci, and Ginsberg, and the law firms of GrayRobinson and Peter R. Ginsberg, P.C. ("Sanctions Motion"). Ginsberg then filed a third Petition for Writ of Mandamus requesting that the district court compel Judge Briskman to reconsider and reverse the decision to exclude himself as a witness. The district court denied the third Petition for Writ of Mandamus.

Evidentiary hearings on the Recusal Motion were held on November 29, 2006, December 11, 2006 and January 29, 2007. On February 27, 2007 the bankruptcy court denied the Recusal Motion, and on August 17, 2007 Judge Briskman issued an Order to Show Cause whether sanctions should be imposed. On August 28, 2007 Judge Briskman conducted an evidentiary hearing on the Sanctions Motion. The court granted the Sanctions Motion on January 2, 2008. In the Sanctions Order, Judge Briskman imposed monetary sanctions of $371,517.69 against Ginsberg and barred him from practicing before the United States Bankruptcy Court for the Middle District of Florida for a period of five years.[4] Ginsberg appealed both Orders. On June 17, 2008, District Court Judge Anne C.

---

[4] Pursuant to an August 8, 2007 settlement agreement with Evergreen, GrayRobinson agreed to pay Evergreen $300,000 in resolution of the Sanctions Motion. The court found this settlement amount "an appropriate sanction to redress all wrongful acts of GrayRobinson, Vitucci, and Spradley falling within the purview of the Sanctions Motions, Section 105(a) of the Bankruptcy Code, and the Court's inherent powers to sanction wrongful conduct." (Sanctions Order at 84-85.)

Conway entered an order affirming, among other things, the bankruptcy court's

denial of the recusal motion and imposition of sanctions.

## II. LEGAL STANDARD

Federal courts, including bankruptcy courts, possess inherent authority to

impose sanctions against attorneys and their clients. In re Walker, 532 F.3d 1304,

1309 (11th Cir. 2008). "This power is derived from the court's need to manage

[its] own affairs so as to achieve the orderly and expeditious disposition of cases."

Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006) (internal citations

omitted). Federal statute 11 U.S.C. § 105(a) also gives the court the authority to

"*sua sponte*, tak[e] any action or mak[e] any determination necessary or

appropriate to enforce or implement court orders or rules, or to prevent an abuse of

process." 11 U.S.C. § 105(a) (2005).

We review the exercise of these powers for abuse of discretion. In re

Sunshine Jr. Stores, Inc., 456 F.3d at 1304. Under this standard, "we ask whether

[the court] 'applie[d] the wrong legal standard or ma[de] findings of fact that are

clearly erroneous.'" Id. (quoting Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir.

2001)).

## III. DISCUSSION

13

Ginsberg appeals the bankruptcy court's imposition of sanctions for the

drafting, filing and litigating of the Recusal Motion.  Ginsberg alleges that the

district court erred in affirming the sanctions because (1) the Recusal Motion was

proper; (2) the bankruptcy court should have disclosed the existence of a

complaint of judicial misconduct and testified to its contents; and (3) the

bankruptcy court should not have presided over the Sanctions Motion.  We

address each contention below.

## A.    Recusal Motion

A party may file a Recusal Motion when a Judge's impartiality may

reasonably be questioned.  See 28 U.S.C. § 455(a) ("Any justice, judge, or

magistrate judge of the United States shall disqualify himself in any proceeding in

which his impartiality might reasonably be questioned.").  "The inquiry of whether

a judge's impartiality might reasonably be questioned under § 455(a) is an

objective standard designed to promote the public's confidence in the impartiality

and integrity of the judicial process."  Davis v. Jones, 506 F.3d 1325, 1332 n.12

(11th Cir. 2007) (internal citations omitted).  Thus, the court looks to "the

perspective of a reasonable observer who is *informed of all the surrounding facts*

*and circumstances.*'"  Cheney v. U.S. Dist. Court for Dist. of Columbia, 541 U.S.

913, 924 (2004) (quoting Microsoft Corp. v. United States, 530 U.S. 1301, 1302

(2000)); see also Glass v. Pfeffer, 849 F.2d 1261, 1267 (10th Cir. 1988) ("Under this section, factual allegations need not be taken as true, and the test is whether 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" (quoting Hinman v. Rogers, 831 F.2d 937, 938 (10th Cir. 1987))).

Ginsberg essentially pled three bases for the appearance of impartiality: (1) the filing of a complaint of judicial misconduct against Judge Briskman in a previous matter involving Shuker; (2) the bankruptcy court's acceptance and consideration of Shuker's *ex parte* and oversized filing; and (3) Shuker's violations of the Florida Rules of Professional Conduct. The bankruptcy court found that Ginsberg failed to establish any legal or factual support for these allegations and that the Motion was filed for an improper purpose. We find that the bankruptcy court was not clearly erroneous in its findings of fact and that it applied the correct legal standards.

### 1.   *Hudson's Judicial Council Complaint*

On appeal, Ginsberg asserts that the filing of a complaint of judicial misconduct with the Judicial Council of the Eleventh Circuit was his main basis for filing the Recusal Motion. Ginsberg's Recusal Motion repeatedly referenced this complaint of judicial misconduct ("the Complaint"), which was filed by Phil

Hudson ("Hudson") with the Judicial Council, regarding Judge Briskman's conduct in the bankruptcy action <u>Advanced Telecomm. Network, Inc. v. Daniel W. Allen</u> ("<u>ATN</u>"). (Recusal Mot. at 2.)

In <u>ATN</u> Shuker represented ATN, Hudson represented the defendants/creditors Daniel and David Allen, and Judge Briskman initially presided. Cuthill served as a witness in that case, but there is no overlap in the parties or the issues between <u>ATN</u> and the instant bankruptcy proceedings.

According to the Recusal Motion, Shuker filed an *ex parte* motion in <u>ATN</u>, Judge Briskman held an *ex parte* hearing on that motion, and Judge Briskman ordered the *ex parte* motion be removed from the docket. These allegations are generally accurate. However, it is important to note the context. ATN was attempting to recover funds from the Allens. At the motion hearing, Shuker expressed ATN's concern that the Allens would secret assets in other corporations to avoid turning them over. The Allens had already been ruled in contempt of two orders relating to the disclosure or repatriation of assets, so ATN did not want to give the Allens any advance warning of its attempt to have a temporary receiver appointed. At the hearing, Shuker and Judge Briskman also discussed the possibility of the Allens being arrested for contempt. Judge Briskman agreed to take the hearing off the docket sheet so that the Allens would not have advance

16

warning of the matters discussed therein.  A court reporter who transcribed the hearing was also present and a full record was made.

Hudson later learned of the *ex parte* motion and hearing and filed an Emergency Motion to Disqualify Opposing Counsel.  At some point <u>ATN</u> was transferred to Bankruptcy Judge Jenneman, who held a hearing on the Motion and denied it.  In her Order denying the Motion, Judge Jenneman stated, "*ex parte* hearings, while discouraged, are sometimes appropriate.  In this case, the decision to allow ATN to proceed with a hearing without notice to the Allens does not appear improper.  Moreover, the hearing was held on the record." (Am. Memo. Op. Den. Defs.' Emergency Mot. to Disqualify at 8.)  Thereafter, Hudson also filed the Complaint with the Judicial Council of the Eleventh Circuit.

In this case, Ginsberg first learned of Hudson's Complaint from Spradley on July 7, 2006.  Spradley received an email from an attorney with his firm named John Anthony informing him that Hudson had filed a Complaint related to the <u>ATN</u> matter.  Anthony heard this from another attorney (not Hudson).  On the same day, Spradley spoke to Hudson about the Complaint, confirmed that Hudson had in fact filed one, and informed Ginsberg of what he had learned.  (Sanctions Tr. Vol. II at 119.)  On July 8, 2006 Ginsberg began researching the Recusal Motion.  (<u>Id.</u> at 18.)  Ginsberg himself never spoke to Hudson before filing the

Recusal Motion (id. at 30), and neither Spradley nor Ginsberg asked Hudson for a copy of the Complaint or other proof of its filing (see id. at 30; 142, 153-54).

At the sanctions hearing Ginsberg testified that after reviewing the ATN docket he detected "parallels" between the ATN case and this one. (Sanctions Tr. Vol. I at 169.)  Ginsberg said he was troubled by the appointment of an interim trustee in both cases. (Id.)  Additionally, Ginsberg claimed that Shuker's threats of imprisonment in ATN reminded Huggins and Knight of Shuker's threats of imprisonment in this case (discussed below), and they were concerned about the implication that Shuker would have Judge Briskman's approval in doing so. (Id.) Ginsberg therefore filed the Recusal Motion.

In the Motion, Ginsberg alleged that "Judge Briskman presiding here is, himself, under investigation by the 11th Circuit Court of Appeals following *ex parte*, allegedly inappropriate communications with Mr. R. Scott Shuker." (Recusal Mot. at 2.)  Ginsberg claimed that Judge Briskman's failure to notify the parties of the ongoing investigation, as well as Shuker's role as a future witness in the investigation, further bolstered the appearance of partiality. (Id. at 21, 27.)

### a.    *Lack of Factual Support*

We find that the bankruptcy court was not clearly erroneous in finding no factual support for Ginsberg's assertion that the existence of the Complaint created an appearance of impropriety requiring recusal.

The mere filing of a complaint of judicial misconduct is not grounds for recusal. As Shuker's expert witness Lubet explained, it would be detrimental to the judicial system if a judge had to disqualify himself anytime someone filed a complaint about his conduct. A party would only have to file a complaint to get a different judge. Lubet testified that the Rules of the Judicial Council of the Eleventh Circuit Governing Complaints of Judicial Misconduct or Disability ("Judicial Council Rules") allow lots of complaints to be filed, many of which are frivolous. (Recusal Tr. Vol. II at 13-14.) The Rules therefore create their own screening mechanism for these complaints; a stage one "limited inquiry" to determine whether a "formal investigation" into the validity of the complaint is necessary. (Id.); see also Judicial Council Rule 4(a) ("the Chief Judge may conduct *a limited inquiry* for the purpose of determining – (1) whether appropriate corrective action has been or can be taken *without the necessity for a formal investigation*; and (2) whether the facts stated in the complaint are plainly untrue or are incapable of being established through investigation." (emphasis added)). This limited inquiry resolves 98% of all filed complaints; only 2% of all

complaints ever proceed to the formal investigation stage.  (Recusal Tr. Vol. II at 13-14.)  It would create an absurd result to force a judge to recuse himself because of the 2% possibility that the complaint will become an investigation and the even smaller chance that an involved party will be called as a witness in that investigation. (Id.) Thus, the mere existence of a complaint of judicial misconduct does not create an appearance of impropriety.

While a formal investigation into a complaint may trigger recusal, there is no evidence of an impending investigation here.  Yet, the Recusal Motion referred to the Complaint as an "investigation" twelve times,  made fourteen implications of the existence of a formal investigation, and referred to Shuker as a "key player in the investigation" and a "future witness."  (Recusal Mot. at 21.)  During the Sanctions Hearing, Ginsberg testified that he *assumed* there was an "ongoing investigation" by virtue of the fact that Hudson's Complaint had not been dismissed for a number of months.[5]  Yet, according to the Judicial Council Rules the length of time that a complaint remains pending is irrelevant.[6]  Ginsberg further asserted that Spradley used the term "investigation" when relating his

---

[5]  At the time the Recusal Motion was filed the Complaint had only been pending for five or six months. (Sanctions Tr. Vol. II at 162.)

[6]  Shuker's Expert Witness Lubet testified that the House Judiciary Committee has held a series of hearings about the length of time it has taken to handle these complaints.  (Recusal Tr. Vol. II at 50.)

conversations with Hudson (Sanctions Tr. Vol. II at 5) and Spradley testified that
Hudson had used the term "investigation" when relating the events to him (id. at
136-37, 142).  In Hudson's deposition, however, he testified that he never used the
term "investigation." (Sanctions Order at 28.)  Anthony's deposition revealed he
did use the term "investigation," but Anthony admitted that he had no first hand
knowledge of the Complaint. (Recusal Ex. II at 56-57, 62.)  Anthony compared
his knowledge of the Complaint to knowledge about "Britney Spears' divorce . . .
a lot of people have heard a lot." (Id. at 56-57.)

Moreover, the Judicial Council Rules clearly state that if the Chief Judge
was conducting a formal investigation, Hudson (the complainant) would be
informed. See Judicial Council Rule 4(c) ("If the complaint is not dismissed . . .
the Chief Judge shall appoint a special committee . . . to investigate the allegations
of the complaint . . . . The Chief Judge *shall notify the complainant* and the
complained-of judge of the appointment of a special committee . . . ." (emphasis
added)).  Hudson was never notified of such and never indicated to anyone that he
had been.  Spradley testified that Hudson's only correspondence with the Judicial
Council of the Eleventh Circuit was immediately after he filed his Complaint.
(Sanctions Tr. Vol. II at 142.)  Hudson received a letter confirming the Complaint
was received and submitted to the Chief Judge. (Id.)  Spradley further testified

21

that he spoke with Hudson three or four times after that "with the expressed reason to ask if he had heard the result or an update, and he replied in the negative." (Id. at 154.) Even though the Judicial Council Rules clearly state that Hudson would be informed if his Complaint was dismissed or moved to the investigation stage, Ginsberg relied only on the fact that Hudson was not informed of a change in status to deem it an "investigation."[7] This is clearly an unreasonable reliance and jump to an unsupported conclusion.

Similarly, the mere existence of an *ex parte* hearing is not grounds for recusal. As Lubet explained there are many reasons judges properly hold *ex parte* hearings, such as a temporary restraining order or bail revocation proceedings. Indeed, in <u>ATN</u> Judge Jenneman stated that *ex parte* hearings may be appropriate. (Am. Memo. Op. Den. Defs.' Emergency Mot. to Disqualify at 9.) In fact, Judge Jenneman held that the *ex parte* hearing in <u>ATN</u> did not create the appearance of

---

[7] On appeal Ginsberg asserts that "a technical definition of investigation" was not suggested. (Initial Br. at 34.) Spradley also testified at the Sanctions Hearing that he looked up the term "investigation" in Webster's dictionary and believed it to apply to the present situation. (Sanctions Tr. Vol. II at 137.) Yet, at the same hearing Ginsberg testified that his "unequivocal understanding was that the complaint had passed through the first phase, that the chief judge had come to the conclusion there was merit to the complaint, and that whether it was the chief judge or the committee, witnesses were going to be contacted, information was to be gathered." (Sanctions Tr. Vol. I at 80.) This is not the dictionary definition of "investigation," but a definition in accordance with the procedure outlined by the Judicial Council Rules indicating that Ginsberg was asserting the technical definition of investigation in the Recusal Motion.

impropriety. (Id.) ("[T]he conversation [did] not rise to the level of a specifically identifiable impropriety.").

### b.   Lack of Legal Support

The bankruptcy court also found that the Recusal Motion lacked legal support. We agree.

The only case Ginsberg relied on for the proposition that a complaint of judicial misconduct (which Ginsberg equates with an investigation) requires recusal was United States v. Garrudo, 869 F. Supp. 1574 (S.D. Fla. 1994). (Recusal Mot. at 20.) In Garrudo, a district court judge was under investigation by the United States Attorney's Office "for accepting gratuities worth thousands of dollars . . . ." Garrudo, 869 F.Supp. at 1576. While presiding over criminal cases, the judge was told he was the "subject" of a pending United States Attorney's Office investigation. Id. The Judge was subsequently interviewed by federal agents and served with a grand jury subpoena *duces tecum*. Id. Once he was informed that his status was elevated to that of a "target" the judge recused himself from all pending criminal matters. Id. Criminal defendants convicted or sentenced by the judge while the investigation was pending, but before the judge recused himself, challenged their convictions. Id. The defendants claimed that the

23

judge had an incentive to curry favor with the government.  Id.  The district court

held that recusal was appropriate.[8]

Ginsberg argues that the criminal grand jury investigation in Garrudo and

the present judicial misconduct complaint are analogous.  (Recusal Mot. at 20)

("Fortunately there are few cases in which courts have had to apply the recusal

statute to a circumstance in which a judge is under an investigation *like the instant*

*investigation.  A notable exception is* Garrudo." (emphasis added)).  However,

there is no evidence that Judge Briskman was under investigation, let alone a

criminal one.  In our view, a civil complaint of judicial misconduct and a criminal

grand jury investigation are not analogous.

The facts at issue here are further distinguishable from Garrudo.  Ginsberg

relies on Garrudo for the principle that "an alignment of interests between the

presiding judge and counsel in a position to influence the outcome of an

investigation or inquiry affecting the judge would cause a reasonable objective

observer to question the impartiality of the court."  (Initial Br. at 32.)  In Garrudo,

however, the party conducting the investigation (the United States Government)

was actually before the court, so the court may have had an incentive to curry

---

[8] This decision was affirmed by an 11th Circuit panel. A subsequent en banc court split evenly on the question of recusal, thereby affirming the previous ruling by operation of law.

favor. Here, there was no investigation, only a complaint which had a 2% chance of becoming an investigation. Moreover, the existence of the investigation was well known in <u>Garrudo</u> and could therefore affect public confidence in the judiciary. The investigation was discussed in various newspapers and was printed on the front page of the <u>Miami Daily Business Review</u>. <u>Garrudo</u>, 869 F. Supp. at 1576. On the other hand, evidence of this Complaint was not in the public forum until Ginsberg filed the Recusal Motion. A confidential complaint that the public is not aware of does not have any affect on the "public's confidence in the impartiality and integrity of the judicial process." See <u>Davis</u>, 506 F.3d at 1332 n.12.

In this regard, we agree with the rulings of the bankruptcy court and the district court.

## 2.    *Ex Parte Communications*

In the Recusal Motion Ginsberg cites to two allegedly inappropriate *ex parte* communications between Shuker and Judge Briskman in the Mataeka AP proceeding: a discovery motion and proposed findings of fact and conclusions of law ("FOFCOL").[9]

-----

[9] On appeal, Ginsberg asserts that these incidents "were not intended as separate instances of misconduct warranting recusal." (Initial Br. at 34.) The incidents merely demonstrate that an objective observer would question the court's impartiality. (<u>Id.</u>) These

### a.   *Discovery Motion*

The bankruptcy court found that Ginsberg had no factual support for his assertion that Shuker "apparently"[10] filed an *ex parte* emergency motion to compel production of documents ("Emergency Motion") and that Judge Briskman's subsequent order "was accomplished without a hearing" even though Spradley objected to the requested relief.  The record supports the conclusion that such an assertion was groundless.

The facts surrounding this showed that Shuker filed an Emergency Motion in the Knight proceeding on July 17, 2006, six days before the July 24, 2006 trial date.  Upon receipt, Judge Briskman's chambers called Spradley's office to schedule a hearing, but Spradley was out of town and unavailable, and there was no offer to send someone else from his office.  As the trial was set for six days after the Emergency Motion was filed, "[w]aiting to conduct a hearing upon Spradley's return from vacation was not an option."  (Recusal Order at 28.)  A hearing was therefore held and an Order was entered.

---

allegations, however, lack factual support and therefore do not affect the appearance of partiality. See Cheney, 541 U.S. at 924 (the decision to disqualify must be "made from the perspective of a reasonable observer who is *informed of all the surrounding facts and circumstances*." (citations omitted) (emphasis in original)).

[10] Ginsberg testified that he hedged his allegations with the word "apparently" because Ginsberg was never given either Shuker's motion or the Judge's order.  (Sanctions Tr. Vol. II at 43.)

There is no evidence, however, that the Emergency Motion was filed *ex parte*. Before filing the Emergency Motion Shuker emailed Spradley, requesting expedited discovery. Spradley copied Ginsberg on his response, denying Shuker's request. Thus, both Spradley and Ginsberg were on notice that Shuker was seeking discovery and that a hearing was imminent. Moreover, both Spradley and Ginsberg were given formal notice of the filing of the Motion. The certificate of service attached to the Motion indicates that GrayRobinson and Ginsberg were both served electronically, by fax and first-class mail.[11] Finally, the Order entered was not Shuker's proposed order, and in fact granted only some of the relief that Shuker requested. In our view, Judge Briskman appropriately addressed an evidentiary issue within the time constraints and there was in fact no basis for the allegations made in the Recusal Motion.

### b.    *Findings of Fact and Conclusions of Law*

The record also fully supports the finding of the bankruptcy court that Ginsberg's contention that the court ordered the parties to file *ex parte* FOFCOL and relied on Shuker's oversized FOFCOL was without any basis whatsoever.

---

[11] Ginsberg's allegation of lack of service is even more confusing because Ginsberg's *pro hac vice* application listed GrayRobinson attorney Vitucci as the designated person to be served in the Mataeka Proceeding. Service to Ginsberg was not required.

A June 20, 2005 email from Susan Coberly, Judge Briskman's assistant, inviting the parties to file FOFCOL, not to exceed 15 pages, is the only written document Ginsberg presented to prove the filings were court ordered. The email did not discuss service. Both sides subsequently submitted FOFCOL to the court without serving each other. Shuker's FOFCOL was 46 pages long. Months later in a deposition, Spradley and Ginsberg learned of this 46-page submission when the deponent referred to it.

Spradley immediately sent Shuker an email expressing his concern about Evergreen's failure to comply with the court's 15-page limitation. (Email from Spradley to Shuker of 10/10/05.) Shuker responded to the email, stating "I understand that you called Susan about the page [length] and were informed the Judge has not yet looked at either proposed findings. Thus, it seems the simple solution is for me to cut mine down to 15 pages and replace the longer one." (Email from Shuker to Spradley of 10/17/05.) On November 3, 2005 Shuker again emailed Spradley to inform him that he had submitted a revised, 15-page FOFCOL. "By the way, we submitted revised FOFCOL today which were 15 pages; the Judge never reviewed the longer one. Thus, I assume that is now a *moot issue*." (Email from Shuker to Spradley of 11/03/05) (emphasis added). The next day Spradley responded in apparent understanding: "Thanks for the note re:

28

findings and conclusions. I'll call you in a while." (Email from Spradley to Shuker of 11/04/05.)

At the end of trial the court allowed the parties to file another set of FOFCOL. Shuker testified that Spradley and Ginsberg objected to his suggestion of not exchanging these submissions. An objection was filed and a hearing was scheduled but Spradley and Ginsberg opted out of the hearing and their objection was thereby withdrawn. Both sides then submitted FOFCOL to the court without serving each other. This time Shuker submitted a 15-page document. Spradley and Ginsberg, however, submitted a 23-page filing: a 15-page document entitled "Defendants' Proposed Findings of Fact and Conclusions of Law" and an 8-page document entitled "Citations to the Record." All of the submissions were manipulated to maximize word space: the parties used smaller font and margins than the local rules allow.

### I.    *Ex Parte Nature*

There is no evidence that the *ex parte* nature of the filings were court-ordered. Spradley testified that "I cannot state with certainty that [Ms. Coberly] said the Court specifically says you are not to give the other side the documents. But whatever words were said, I came away with the impression that's what we were to do, and then the fact that the parties acted in conformity with that."

(Recusal Tr. Vol. IV at 133.) Ginsberg did not directly communicate with Ms. Coberly, but testified that he was told by Spradley the court had ordered *ex parte* filings. (Sanctions Tr. Vol. I at 95-96.) Ginsberg further testified that the court ordered the second FOFCOL be filed *ex parte* in open court and that he objected at that time. (Id.) However, Ginsberg could not locate a transcript or any other evidence of this directive. (Sanctions Tr. Vol. II at 49-51.) Neither can we.

On the other hand, Shuker testified that the FOFCOL were filed *ex parte* based on a mutual understanding between the lawyers; it was not based on a court order. (Id. at 185-86.) Shuker explained that during the first filing the trial was still ongoing and he did not want the opposition's witnesses to read his clients' FOFCOL and change their testimony. (Id.) For the second filing, Shuker testified that the trial had been so expensive that he did not want to add the costs of exchanging and objecting to each others submissions. (Id.)

At best, Ginsberg presented evidence that the attorneys had some understanding about not serving each other. We find no evidence, however, that the court *ordered* the parties to submit the filings *ex parte* or that the court was aware that such was being done.

### ii. *Reliance on 46-page Filing*

30

We also find no evidence that Judge Briskman read, let alone relied on, Evergreen's 46-page FOFCOL and Ginsberg has presented none.

Due to the overlap between the court's ultimate FOFCOL and Evergreen's 46-page FOFCOL, Spradley and Ginsberg contended that Judge Briskman relied on the 46-page document. (See Recusal Tr. Vol. IV at 97; Sanctions Tr. Vol. I at 100.) Spradley and Ginsberg also felt it significant that the court never disclosed the 46-page submission or formally rejected the oversized filing.

Yet, neither Spradley nor Ginsberg had any reason to believe Judge Briskman or his law clerk actually read the 46-page FOFCOL. (See, e.g., Recusal Tr. Vol. III at 67, 153; Sanctions Tr. Vol. I at 101.) The only evidence produced was the emails discussed above, which suggest that Judge Briskman did *not* read the 46-page FOFCOL and that it was a "moot issue." Further, at the time the Motion was filed, neither Ginsberg nor Spradley had seen the 15-page replacement FOFCOL or the FOFCOL submitted at the conclusion of the trial. (Recusal Tr. Vol. III at 97.) At the recusal hearing Shuker testified that all of the facts and conclusions contained in the 46-page submission could be found in Evergreen's two 15-page submissions or in the FOFCOL in the Kime opinion, a related case cited in Evergreen's 15-page submission. Spradley and Ginsberg conceded that they had never reviewed either of Evergreen's 15-page submissions or compared

31

those documents with the court's ultimate FOFCOL. Ginsberg says he *assumed* that Judge Briskman read the oversized FOFCOL. This is another unjustified position in the face of emails to the contrary.

Moreover, Shuker's expert witness Professor Lubet explained that even if the emails are incorrect and Judge Briskman actually read the 46-page submission, he could have easily disregarded it. Indeed, judges are asked to disregard evidence all of the time.

Finally, we note that although Ginsberg and Spradley were quick to accuse Shuker of filing an oversized FOFCOL ("Mr. Shuker took advantage of the clandestine filings by *blatantly flaunting* the page limits imposed on Movants" (emphasis added)), their own FOFCOL was oversized and in violation of the Local Rules. (Recusal Mot. at 27.)

Once again, the record supports the bankruptcy court's findings.

### 3.    *Shuker's Behavior*

Finally, the Recusal Motion complained of Shuker's behavior and statements which allegedly violated Rules 4-3.4(g) and 4-3.4(h) of the Florida Rules of Professional Conduct.[12] The Motion alleged Shuker made "unethical

---

[12] On appeal Ginsberg does not address the allegations of Shuker's improper conduct. Because Shuker's conduct was alleged as a basis for filing the Recusal Motion we still address it below.

threats of seeking, and promises of obtaining, the incarceration of the individual

Movants and similar threats directed at Movant's Counsel." (Recusal Mot. at 3.)

The bankruptcy court found that Shuker's behavior did not rise to the level of a

disciplinary rule violation or create doubts about the bankruptcy court's

impartiality. The record supports this finding.

### a.    *Threats to Knight and Huggins*

After a court hearing in which Shuker sought orders directing Knight and

Huggins to repatriate certain funds or be held in civil contempt, the Recusal

Motion asserts that Shuker told Knight and Huggins they would end up in jail if

they did not settle, and Huggins would "die in jail." (Recusal Mot. at 9.) It is now

clear that this never happened.

Knight's own testimony belies the facts as stated in the Recusal Motion.

The Motion states that "Mr. Shuker approached [Knight and Huggins] outside the

door of the Court and announced that . . . [Knight and Huggins] would 'end up in

jail' and that Mr. Huggins, 67-years old, 'would die in jail.'" (Id.) According to

Knight, however, Shuker did not approach either Knight or Huggins, his

comments were made only to Spradley and Ginsberg. (Recusal Tr. Vol. IV at 162;

Knight Aff. at 2.) Knight testified that while Spradley and Shuker were speaking

in the hallway, Shuker told Spradley if he did not have a settlement on his desk

soon, Spradley's clients were going to go to jail and Huggins would die in jail. (Id.) Knight claims that although he was not part of the conversation, he was within earshot and overheard Shuker's threats. (Id.) Huggins, however, was in the bathroom (out of earshot) at the time. (Id.) Being within earshot of two lawyers negotiating is much different than being *approached* by opposing counsel. Further, if Huggins was in the bathroom during Shuker's alleged threats, Shuker could not have *told Mr. Huggins* that he "would die in jail."

Moreover, Shuker testified that this was a warning, not a threat. (Recusal Tr. Vol. IV at 196.) If Huggins and Knight did not make a settlement offer for the money already owed they risked being found in civil contempt and sent to jail. (Id.)

Again, there is simply no support in the record for these allegations. Such misstatements reflect either a failure to investigate or a deliberate attempt to deceive.

### b.   *Threats to Spradley*

In another example of "Mr. Shuker threaten[ing] to use what he apparently thought was his court-granted right to threaten imprisonment," the Motion references an incident at Knight's deposition. (Recusal Mot. at 9.) Shuker was allegedly enraged when he saw Spradley at the deposition. Shuker told Spradley

to leave the room and threatened that he would be arrested for trespass if he did

not leave. Spradley did not leave. Shuker then left the room, calmed down, and

returned a few minutes later. The deposition was taken with Spradley present.

Again, the Motion fails to put the incident in context. Shuker testified that

the Knight deposition at issue was not for the general Mataeka proceeding, but for

the private purpose of accessing Knight's funds in aid of execution of an existing

judgment. Shuker did not believe that Spradley had a right to be at the deposition.

Further, Huggins was to be deposed immediately after Knight. Thus, Shuker did

not want Huggins' counsel in the room for Knight's deposition. He did not want

Huggins to know what Knight was being questioned about or testifying to.

Shuker himself acknowledged that his behavior was improper. Spradley

emailed Shuker the next day outlining the inappropriate comment and Shuker

responded with an apology email.

The language used in the Recusal Motion fails to tell the whole story and

thereby exaggerates what occurred.

### c.    *Threats to Ginsberg*

The Motion further mentioned that Shuker threatened to file a bar grievance

against Ginsberg during the deposition of Charles Baron on August 9, 2005.

In our view, Shuker's conduct is understandable in context.  At the recusal hearing, Shuker testified that during a previous deposition Ginsberg interrupted him on numerous occasions and even stopped the deposition mid-question to take Knight (the deponent) out of the room.  Knight allegedly returned to the deposition and, without being asked a related question, immediately retracted a previous answer.  During the Baron deposition Shuker testified that he threatened Ginsberg with the filing of a bar grievance if Ginsberg continued with the same conduct.  Shuker did not want Ginsberg to further interfere with the deposition by telling Baron how to respond to questions.  Shuker explained that he threatened a bar grievance to stop this unethical conduct.  Ginsberg does not contest his alleged conduct.

### d.    *Appearance of Impropriety*

Finally, the Motion asserted that Judge Briskman's apparent endorsement of Shuker's behavior created the appearance of impropriety.  (See, e.g., Recusal Mot. at 10) ("Mr. Shuker continued to craft his own set of procedures, *as endorsed by the Court*"); (id. at 28) ("The proceeding, and prior proceedings, *so empowered* Mr. Shuker that he felt able to threaten the individual Movants with incarceration . . .") (id. at 26) ("Similarly, *[Shuker] appears to have received a judicial nod* to continue to ignore the automatic stay . . ."); (id. at 9) ("Mr. Shuker threatened to

use what he apparently thought was his *court-granted right* to threaten

imprisonment.") (emphasis added).  Spradley and Ginsberg also testified that they

believed the court endorsed Shuker's actions.  During the recusal hearing,

Spradley testified that he drew an inference from Shuker's conduct - threatening

imprisonment on two occasions - that Shuker believed he only had to call Judge

Briskman to secure an arrest.  (Recusal Tr. Vol. III at 103-07.)  He testified that he

was not aware of any additional facts that would support these allegations, but that

the allegations reflected his "impression" based on Shuker's behavior.  (Id.)

Ginsberg also testified that it seemed Shuker felt empowered by Judge Briskman

to act as he wanted.  (Sanctions Tr. Vol. I at 104-05.)  He stated:

> In the context of reviewing the ATN matter, the idea that Mr.
> Shuker felt so comfortable with threatening people and so
> comfortable with doing what he was doing, that he was prepared
> to call Judge Briskman in for assistance and effectuate Mr.
> Spradley's arrest raised additional red flags about what it was that
> caused Mr. Shuker apparently to feel so empowered in our
> proceedings.

(Id.)

Ginsberg later recanted this basis for the Recusal Motion (the court's

endorsement of Shuker's behavior) in a letter to the court dated January 19, 2007.

In the letter, Ginsberg stated:

37

> Other matters have been raised in the instant hearing, including
> actions by Mr. Shuker in relation to parties and counsel.
> However, we do not believe that any evidence has been entered
> regarding a relationship between your Honor and Mr. Shuker that
> show [sic] that you endorsed such actions, and thus believe that,
> although the activities were inappropriate, they do not serve as a
> basis for the relief requested by the Motion. We believe that Mr.
> Shuker was acting on his own at those times.

(Letter from Ginsberg to Judge Briskman of 1/19/07.) Ginsberg testified at the

sanctions hearing that the letter was only to clear up a misunderstanding, he never

alleged "an illicit or an improper relationship between Mr. Shuker and Judge

Briskman." (Sanctions Tr. Vol. II at 14.) Ginsberg explained that for recusal he

was only required to prove that the public might perceive impropriety from

Shuker's actions, not actual court endorsement. (Id; see also Sanctions Tr. Vol. I

at 117.) In our view, however, even though Ginsberg presented no evidence of

court endorsement, the Recusal Motion clearly accused the court of endorsing

Shuker's actions. Such an allegation under these circumstances is improper.

We therefore find that the bankruptcy court was not clearly erroneous in its

fact finding which is fully supported by the record.

### 4.   *Improper Purpose/Bad Faith*

On appeal, Ginsberg alleges that the filing of the Motion was not

sanctionable; it was well justified in fact and law and was brought for a proper

38

purpose. In our view, a court could reasonably conclude that the content, timing, and tone of the Recusal Motion indicate bad faith.

### a.    *Sanctions*

In this case, the bankruptcy court sanctioned Ginsberg under Federal Rule of Bankruptcy Procedure 9011, the court's inherent sanctioning powers, and 11 U.S.C. § 105. On appeal to the district court, Ginsberg argued that the Sanctions Motion violated Rule 9011's twenty-one-day safe harbor provision.[13] The district court found that it was not necessary to decide whether the safe harbor provision was violated because the sanctions imposed were clearly valid under 11 U.S.C. § 105. In re Evergreen, 391 B.R. at 188. We agree.

Under Section 105(a) the court may take *any action* "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Thus, a court may impose sanctions if a party violates a court order or rule. See, e.g., Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1542 (11th Cir. 1996) (awarding sanctions under Section 105(a) for a violation of an automatic stay provision).

---

[13] The safe harbor provision allows attorneys to withdraw motions like this within twenty-one days from the date of filing. If a party so withdraws the motion, it is not sanctionable. Even though Ginsberg did not withdraw the Recusal Motion within twenty one days from the date of filing, he argued that the Sanctions Motion was still in violation of the safe harbor provision because it was filed before the expiration of the extra three days given for mailings.

Sanctions were also imposed under the bankruptcy court's inherent power which is similarly not affected by the safe harbor provision of Rule 9011. To impose sanctions under the court's inherent power, the court must find bad faith. In re Walker, 532 F.3d at 1309. "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." (Id.) (internal citations omitted). "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998); see also Jones v. Int'l Riding Helmets, Ltd., 49 F.3d 692, 695-96 (11th Cir. 1995) (finding that a court must determine whether a reasonable inquiry was conducted prior to the filing of a pleading); In the Matter of Med. One, Inc., 68 B.R. 150, 152 (Bankr. M.D. Fla. 1986) (finding that failure to make a reasonable inquiry into whether a filing alleged valid claims was sanctionable). Further, continually advancing "groundless and patently frivolous litigation" is "tantamount to bad faith." Glass, 849 F.2d at 1265.

### b.     Challenges to Adverse Rulings

40

The bankruptcy court was fully justified in finding that the Recusal Motion was filed and litigated as "an offensive litigation strategy." (Sanctions Order at 68.)

Challenges to adverse rulings are generally grounds for appeal, not recusal. In re Walker, 532 F.3d at 1311; see also Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) ("[E]xcept where pervasive bias is shown, a judge's rulings in the same or a related case are not a sufficient basis for recusal."). Nevertheless, a considerable portion of the Recusal Motion disputed rulings unfavorable to the debtors.[14] (See, e.g., Recusal Mot. at 2) (referring to "a series of dubious judicial actions taken in conjunction with Mr. Shuker."). The Recusal Motion criticizes the court for appointing an interim trustee;[15] not sufficiently addressing the automatic stay;[16] granting the discovery order;[17] making incorrect FOFCOL in the

---

[14] At least twenty-seven paragraphs in the Recusal Motion disputed adverse rulings.

[15] "Ignoring the absolute dearth of evidence justifying the appointment of an interim trustee, and without making a single finding of fact on the record or in his Order, Judge Briskman granted the appointment." (Recusal Mot. at 9.)

[16] Ginsberg argued that Shuker and Cuthill violated the automatic stay provisions in the bankruptcy code by seeking discovery on at least four occasions and that the court "refused" to enforce the automatic stay. (Recusal Mot. at 11-12.)

[17] Ginsberg asserted that the expedited discovery motion discussed above was filed ex parte and granted without a hearing even though Spradley objected to the relief requested.

41

Mataeka AP judgment;[18] and miscalculating the damages award in the Mataeka AP

judgment.[19] Spradley even conceded in testimony that he was "really frustrated at

that point, the fact that I felt relief was coming down in favor of the plaintiff and

against the defendants in the case and in a fashion that didn't appear to be just."

(Recusal Tr. Vol. III at 146.) Yet, a recusal motion is an improper vehicle to

dispute disagreeable adverse rulings. It is a clear abuse of such a pleading.

Additionally, Ginsberg requested the revocation of *all* orders previously

entered in the Mataeka AP and related proceedings. In other words, Ginsberg

sought the revocation of more than 250 orders all previously entered in the

Evergreen case. Yet, Ginsberg presented no evidence that this was an

extraordinary circumstance which required *vacatur*. Liljeberg v. Health Servs.

Acquisition Corp., 486 U.S. 847, 863 (1988) (noting that *vacatur* should only be

applied in "extraordinary circumstances" (citation omitted)). In our view,

requesting this kind of relief, while discussing numerous rulings adverse to the

---

[18] The Recusal Motion referenced the March 22, 2006 judgment in favor of Evergreen, claiming it was factually inaccurate and providing specific examples of the alleged inaccuracies. (Recusal Mot. at 13-14.)

[19] The Recusal Motion criticized the amount of damages awarded to Evergreen, claiming they were erroneously calculated because of Judge Briskman's reliance on Cuthill's testimony and representations. (Recusal Mot. at 16-18.)

debtors, strongly suggests that the Motion was presented to hamper enforcement of the bankruptcy court's orders.

### c.   *Delay Tactic*

The bankruptcy court also did not err in concluding that Ginsberg filed the Recusal Motion to postpone the involuntary bankruptcy proceedings against his client and the appeal from the Mataeka AP Judgment.

Filing the Recusal Motion frustrated Evergreen's collection efforts on an almost $8 million judgment. The Recusal Motion was filed *the day after* Evergreen finished its *prima facie* case on the involuntary bankruptcy proceedings and it apparently was clear to all concerned that Evergreen was going to prevail. The Motion was not filed until July 26th even though many of the incidents outlined in the Motion happened much earlier.[20]  Ginsberg further petitioned the district court to stay all related proceedings.

Ginsberg also continually stalled the Recusal hearing.  Two days before the scheduled pre-hearing conference, he sought a stay of the proceedings pending the resolution of his Petition for a Writ of Mandamus.  Ginsberg then postponed the

---

[20] The Shuker/Ginsberg deposition skirmish happened almost a year before the Recusal Motion was filed, the 46-page FOFCOL was filed ten months before the Recusal Motion was filed and the issue appeared to be moot, and the Shuker/Spradley deposition skirmish occurred seven weeks prior to the filing of the Recusal Motion.

final evidentiary hearing for one month due to his availability constraints and those of his expert witness. Days before the trial, Ginsberg again sought to continue the trial for two weeks "in order to properly prepare for the depositions of the witnesses and to properly prepare for the final evidentiary hearing." (Recusal Order at 14.) Finally, at the evidentiary hearing, after both parties finished presenting their cases in chief, Ginsberg asked for a continuance to present his rebuttal case. The evidentiary hearing was continued almost two months, at which time Ginsberg sent a letter to the court saying he did not intend on presenting a rebuttal case.

Moreover, the record shows Ginsberg tried to delay the filing of an appeal. After filing the Recusal Motion, Ginsberg filed a motion for extension of time to appeal the Mataeka AP Judgment. The district court found that "the stated reasons for wanting to put off filing an initial brief have varied with each filing seeking delay. Taken as a whole, the record is cause for concern." (D. Ct. Case 06-cv-00837-JA, D.E. # 43.)

These delaying tactics further support the bankruptcy court's finding of Ginsberg's bad faith.

### d.      *Disrespectful Tone*

Finally, the bankruptcy court did not err in finding that Ginsberg's overzealous litigation tactics, use of factual inaccuracies, and disrespectful behavior demonstrate bad faith.

Quoting Blackstone, the United States Supreme Court explained that "the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986) (quoting 3 W. Blackstone, Commentaries at *361). That does not mean that a judge should never disqualify himself for personal bias or prejudice, but it should not be supposed. And as to counsel, as the Ohio Supreme Court has put it,

> [t]he law demands that all counsel foster respect and dignity for those who administer and enforce the law. Conduct that is degrading and disrespectful to judges and fellow attorneys is neither zealous advocacy nor a legitimate trial tactic. Lying to a tribunal and making false accusations against judges and fellow attorneys can never be condoned.

Columbus Bar Assn. v. Vogel, 881 N.E.2d 1244, 1249 (Ohio 2008).

Yet, the record shows Ginsberg indulged in disrespectful statements without legal or factual foundation. Ginsberg ignored all facts indicating that the court did not direct or engage in *ex parte* communications, rely on extra judicial materials, or endorse Shuker's actions. Ginsberg knew about Judge Jenneman's order, yet

Ginsberg did not even mention that Judge Jenneman had held that the *ex parte* hearing was not improper.

Instead of engaging in a reasonable fact finding investigation before making allegations, Ginsberg supposed bias and favor in all of Judge Briskman's actions. For example, because the court did not denounce Shuker's 46-page FOFCOL, Ginsberg claimed the oversized filing was intentional: "One can only reasonably conclude that neither the Court nor Mr. Shuker *had any intention* of Mr. Shuker being limited to filing the proposed findings within the page limit demanded of the Movants." (Recusal Mot. at 27) (emphasis added). Ginsberg also *assumed* the court relied on the 46-page FOFCOL even though there was evidence to the contrary. Further, the Recusal Motion compared Judge Briskman's conduct to criminal judicial misconduct even though Ginsberg had no actual, personal knowledge of the Complaint and no reason to believe that it alleged criminal misconduct. Indeed, Ginsberg did not speak directly to Hudson about the Complaint before calling it an "investigation" or try to contact any of the other people present at the relevant ATN proceeding.

Ginsberg also testified that he was advised by his expert witness Justice Harding that "he had an ethical obligation to see this through" to convince the court that Ginsberg did not file the Recusal Motion for tactical purposes.

46

(Sanctions Tr. Vol. I at 90-91.) However, the record refutes this contention. The record shows that Harding did not advise Ginsberg to file the Recusal Motion, as Harding was not engaged by GrayRobinson until *after* the Recusal Motion was filed. Justice Harding was also not given all of the evidence to develop his expert opinion. For example, Justice Harding was never told that Evergreen filed a subsequent 15-page FOFCOL, he was not shown the emails between Shuker and Spradley discussing whether the court had considered the 46-page submission, nor was he given the 15-page FOFCOL to compare with the court's ultimate FOFCOL. (Sanctions Tr. Vol. I at 54-57.)

Moreover, Ginsberg failed to re-evaluate his accusations after the evidentiary hearing on the Recusal Motion. Ginsberg repeated his claim of court-ordered *ex parte* filings even after the recusal hearing revealed no evidence of such a directive. Ginsberg continued to assert that Judge Briskman relied on the 46-page FOFCOL even though there were emails referencing the discussions of Spradley and Shuker with the court's staff that the 46-page submission was not considered and all of the information in the ultimate FOFCOL could be found elsewhere. Additionally, Ginsberg continued to allege that the Judicial Council had launched an "investigation" into Judge Briskman's conduct even after he learned that Hudson would have been notified if an "investigation" was initiated.

Further, after Knight testified that he merely overheard Shuker's threats of

imprisonment, Ginsberg still continued to assert that Shuker approached Knight

and Huggins and threatened them with imprisonment. Similarly, even after Knight

testified that Huggins was in the bathroom at the time of Shuker's alleged threat,

Ginsberg contended that Shuker told Huggins he would die in jail. The evidence

produced at the hearing was sufficient for Spradley and GrayRobinson to pull out

of the Recusal Motion. Yet, even with mounting evidence to the contrary,

Ginsberg continued to argue the Recusal Motion.

Further, Ginsberg was extremely difficult to deal with and disrespectful to

the court. He refused to answer the court's questions, treated the court as an

adversary and continually made inflammatory statements. For example, Ginsberg

exaggerated the implications of Judge Briskman's actions, alleging that his

conduct "relates directly to the judicial processes, namely the integrity of trial

transcripts, and a party's due process rights and liberty." (Recusal Mot. at 19.)

Ginsberg opened the Recusal Hearing by claiming: "Your honor has compromised

my health, your Honor has compromised my immune system." (Recusal Tr. Vol. I

at 5.) Ginsberg also used accusatory, unsupported language in the three petitions

for writ of mandamus; asserted that Judge Briskman faced "potential career ending

punishment"; and accused him of trying to surreptitiously "brush the matter under

the carpet" so he could "retain authority over these very important issues of judicial and professional conduct." (Response Br. at 16.)

Ginsberg also purposefully pursued recusal very publicly. After learning of Hudson's Complaint, Ginsberg did not first request a private hearing with Judge Briskman and all counsel in these cases to address his concerns, nor did he file the Recusal Motion under seal (ignoring the preference for confidentiality inherent in the Judicial Council Rules discussed below). Instead, the first time Ginsberg raised the Complaint was in a 31-page accusatory motion which used the term "investigation" twelve times and referenced adverse rulings fifty-four times. Ginsberg also immediately brought the Recusal Motion to the attention of the district court. He filed three petitions for a writ of mandamus with the district court while the Recusal Motion was still pending.[21]

In our view, Ginsberg's dogged pursuit of a frivolous claim indicates bad faith.

## B.    Disclosure of the Complaint

---

[21] The Supreme Court has said: "Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. We do not doubt power in a proper case to issue such writs. But they have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him. These remedies should be resorted to only where appeal is a clearly inadequate remedy. We are unwilling to utilize them as a substitute for appeal. As extraordinary remedies, they are reserved for really extraordinary causes." Ex parte Fahey, 332 U.S. 258, 259-60 (1947).

The bankruptcy court did not abuse its discretion by refusing to disclose the existence of the Complaint.

The Judicial Council Rules have strict confidentiality requirements. Judicial Council Rule 16 requires that "complaints, records of investigations and proceedings relating to allegations of judicial misconduct or disability shall be maintained as confidential matters, and shall not be disclosed to the public." Judicial Council Rule 15(f) does allow disclosure of a complaint "upon the written consent of both the complained-of judge and the Chief Judge," but in our view the strict confidentiality requirements indicate the generally secretive nature of judicial complaints.

This preference for confidentiality maintains public confidence in the judiciary. Keeping the existence of the Complaint confidential kept the Complaint from "affecting the public's confidence in the impartiality and integrity of the judicial process." Davis, 506 F.3d at 1332 n.12 (internal citations omitted). It defies logic for Ginsberg to file a motion asserting harm to public confidence in the judiciary when his own actions in filing the Motion and attempting to make the Complaint public are creating such harm. Surely if he was so concerned, Ginsberg could have inquired about the Complaint out of the public eye. Yet, the first time

Judge Briskman was asked to disclose information about the Complaint was in full public view.

Indeed, Ginsberg was relentless in his attempts to force Judge Briskman to testify about the Complaint and make it public. First, Ginsberg listed Judge Briskman as a witness in the pretrial disclosures for the recusal hearing. When Judge Briskman entered an order excluding himself as a witness, Ginsberg sought to compel Judge Briskman to testify. After postponing his rebuttal case during the Recusal Motion hearing, Ginsberg wrote a letter to Judge Briskman *again* requesting he make disclosures about the Complaint. Later, on August 8, 2007, Ginsberg filed another Motion Requesting the Honorable Arthur Briskman Make Certain Disclosures on the Record ("Disclosure Motion") and before Judge Briskman ruled on the Disclosure Motion, at the commencement of the sanctions hearing, Ginsberg made an additional *ore tenus* motion to have Judge Briskman disclose his knowledge of the Complaint on the record.

In addition to the Judicial Council Rules' preference for confidentiality, Federal Rule of Evidence 605 also states that a judge cannot testify at a trial in which he is presiding. F.R.E. Rule 605. Moreover, a judge is not required to recuse himself so that he can testify. See, e.g., Cheeves v. So. Clays, Inc., 797 F.Supp. 1570, 1582-83 (M.D. Ga. 1992) (having a judge testify is manipulated

51

harassment, as it would cause an unjustified voluntary disqualification of the presiding judge or endless delays in the litigation); Sensley v. Albritton, 385 F.3d 591, 599 (5th Cir. 2004) ("a federal judge has a duty to sit where not disqualified which is equally as strong as its duty to not sit where disqualified") (quoting Laird v. Tatum, 409 U.S. 824, 837 (1972)). As Judge Briskman presided over both the recusal hearing and the sanctions hearing, he could not testify at either.

Ginsberg argued that Judge Briskman should have recused himself from both hearings, but Section 455(a) places the burden to decide recusal on the judge who is the subject of the Motion. Section 455(a) states that "any justice, judge, or magistrate judge of the United States shall disqualify *himself*." 11 U.S.C. § 455(a) (emphasis added). Further, judges routinely preside over motions for their own recusal. For example, Justice Scalia presided over a motion to recuse him in a case before the United States Supreme Court. Cheney, 541 U.S. at 913. The Fifth Circuit also held in In re Corrugated Container Antitrust Litigation that "[i]t is for the judge who is the object of the affidavit (of bias) to pass on its sufficiency." 614 F.2d 958, 963 n.9 (5th Cir. 1980) (quoting 13 Wright, Miller & Cooper § 3551 at 375).[22]

---

[22] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

In the event that Judge Briskman erred in some rulings, Ginsberg should have waited to deal with these issues on appeal. In re Walker, 532 F.3d at 1311 ("Adverse rulings are grounds for appeal but rarely are grounds for recusal . . ."). The district court here (through Judge Antoon) advised Ginsberg as much in the denial of Ginsberg's Third Petition for Writ of Mandamus, explaining that Ginsberg should wait until Judge Briskman issued a ruling on the Recusal Motion and *then* appeal it, but Ginsberg simply ignored this instruction. Further, Ginsberg's dogged pursuit of Judge Briskman's testimony supports the bankruptcy court's finding of bad faith. See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1448 (11th Cir. 1998) ("Improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings.").

For all of these reasons we find that the bankruptcy court was not clearly erroneous in its fact finding and applied correct legal standards.

## C.   Presiding over the Sanctions Hearing

Finally, the bankruptcy court did not err in presiding over the Sanctions Motion.

On appeal Ginsberg asserts that Judge Briskman was too emotionally involved in the matter and should have transferred the Sanctions Motion to the

53

district court or another bankruptcy court judge. In certain circumstances "there are criticisms of judicial conduct which are so personal and so probably productive of bias that the judge must disqualify himself to avoid being the judge in his own case." Ungar v. Sarafite, 376 U.S. 575, 583 (1964). However, that does not mean that every attack on a judge disqualifies him from sitting. Id.; see also Sensley, 385 F.3d at 599. "We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions." Ungar, 376 U.S. at 584. Requiring recusal for all disruptive, recalcitrant and disagreeable commentary would undermine the judiciary. See Mayberry v. Pennsylvania, 400 U.S. 455, 463 (1971). "A judge cannot be driven out of a case." Id.

As we have found that Judge Briskman appropriately presided over the Recusal Motion hearing, we also find that Judge Briskman was in the best position to sanction Ginsberg for his conduct therein. We further agree with the district court that "[w]hile some of the Bankruptcy Judge's remarks at the sanctions hearing were immoderate, they were not sufficiently egregious to 'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" Evergreen, 391 B.R. at 189 n.6 (quoting Liteky v. United States, 510 U.S. 540,

54

555 (1994)).  In our view, Ginsberg's egregious conduct - including interrupting

Judge Briskman and grossly mischaracterizing the facts - warranted some of Judge

Briskman's admonishments.  Our reading of the transcripts convinces us that for

the most part Judge Briskman showed great patience and accommodated Ginsberg,

who was experiencing health problems, over and over again.

## IV. CONCLUSION: REASONABLENESS OF SANCTIONS

Ginsberg's unfounded allegations and improper motive support a finding of

bad faith.  See In re Walker, 532 F.3d at 1310.  We therefore believe the court did

not abuse its discretion in imposing sanctions under either Section 105(a) or the

court's inherent authority to sanction improper conduct.

"Civil penalties must either be compensatory or designed to coerce

compliance."  In re Dyer, 322 F.3d 1178, 1192 (9th Cir. 2003) (citing F.J.

Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th

Cir. 2001)).  "On review, it is not necessary to psychoanalyze the [attorneys'

actions] to discover the smallest dollar value that would deter. Our task is to

ensure that the district court did not abuse its discretion in crafting a sanction

award reasonably calculated to deter litigation abuse."  Merriman v. Sec. Ins. Co.

of Hartford, 100 F.3d 1187, 1194 (5th Cir. 1996).

The bankruptcy court did not abuse its discretion in imposing both compensatory sanctions (monetary sanctions) and sanctions designed to coerce compliance (suspension).  In our view, Ginsberg's relentless pursuit of the Recusal Motion, even after the evidentiary hearing revealed no factual support for Ginsberg's contentions, demonstrates that a monetary sanction alone would be insufficient to deter Ginsberg from similarly egregious behavior in the future. Therefore, the imposition of monetary sanctions and a suspension is justified. Moreover, because Ginsberg is a non-bankruptcy (by his admission), New York lawyer who appeared *pro hac vice* before the Bankruptcy Court in the Middle District of Florida, we find that a five year suspension in that court is not too severe.  Finally, the monetary sanctions imposed by the bankruptcy court were based upon the attorneys' fees incurred by the appellees and were fully supported in the record.

Based on the foregoing analysis we affirm the district court's decision to affirm the bankruptcy court's imposition of sanctions.

AFFIRMED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## BILL OF COSTS

Peter R. Ginsberg, Peter R. Ginsberg, P.C.
_____
Appellant

vs.

Evergreen Security, Ltd.
_____
Appellee

Appeal No.   08-14064-BB

*6:08 CV 46*

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JUN 2 4 2009

THOMAS K. KAHN
CLERK

Fed.R.App.P. 39 and 11th Cir. R. 39-1 (see reverse) govern costs which are taxable in this court and the time for filing the Bill of Costs. A motion for leave to file out of time is required for a Bill of Costs not timely received.

### INSTRUCTIONS

In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced.  Multiply this number by the cost per copy ( $.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

| DOCUMENT | Repro. Method (Mark One) | | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
| | In-House | Comm* | | | | | |
| Appellant's Brief | | | | | | | |
| Record Excerpts | | | | | | | |
| Appellee's Brief | | | | | | | |
| Reply Brief | | X | 119 | 1 | 14 **(9)** | 225.35 | **142.81** |
| Transcript Costs | | X | 36 | 1 | 1 | 32.40 | —0— |
| | | | | | | | |
| *Note: If reproduction was done commercially, receipt(s) must be attached. | | | | | TOTAL | $       257.75 | $ **$142.81** |
| | | | | | | REQUESTED | ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred or performed in this appeal and that I have served this Bill of Costs on counsel/parties of record.

Date Signed: _____6/22/09_____

Attorney for: ___Evergreen Security, Ltd.___
(Type or print name of client)

Signature: _____

Attorney Name: ___R. Scott Shuker___
(Type or print your name)

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

### FOR COURT USE ONLY

Costs are hereby taxed in the amount of $ ___$142.81___ against ___Appellant___

and are payable directly to ___Appellee___

Issued on: _____JUL 1 0 2009_____

Thomas K. Kahn, Clerk

By: ___Tresa Patterson___
Deputy Clerk

# United States Court of Appeals
### Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

July 10, 2009

Sheryl L. Loesch
Clerk, U.S. District Court
401 W CENTRAL BLVD STE 1-200
Orlando  FL  32801-0120

**Appeal Number: 08-14064-BB**
Case Style: Peter R. Ginsberg v. Evergreen Security, Ltd.
District Court Number:  08-00046 CV-ORL-22-GAP
SECONDARY CASE NO: 01-00533-BK-ABB

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:

Bill of Costs

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

July 10, 2009

Sheryl L. Loesch
Clerk, U.S. District Court
401 W CENTRAL BLVD STE 1-200
Orlando FL 32801-0120

**Appeal Number: 08-14536-BB**
Case Style: Peter R. Ginsberg v. Evergreen Security, Ltd.
District Court Number:  08-00046 CV-ORL-GAP
SECONDARY CASE NO: 01-00533-BK-ABB

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.



MDT-1 (06/2006)